IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHNNY TAYLOR,<br>    Plaintiff,<br><br>v.<br><br>MICHAEL MORRIS, *et al.*,<br>    Defendants. | Case No. 4:22-cv-04132-JEH-RLH |

**Order**

    This matter is now before the Court on Plaintiff's Motion for Summary Judgment and Defendants' Motion for Summary Judgment under Federal Rule of Civil Procedure 56 and Local Rule 7.1(D)(1). (Docs. 79, 80). For the reasons stated below, Plaintiff's Motion for Summary Judgment is DENIED, and Defendants' Motion for Summary Judgment is GRANTED.

**I**

    On November 1, 2022, Plaintiff Johnny Taylor filed an Amended Complaint under 42 U.S.C. § 1983 alleging that Defendants Rob Jeffreys, Michael Morris, Mark Salsberry, and Anthony Borris violated his Eighth Amendment rights by imprisoning him beyond his Mandatory Supervised Release ("MSR") date. Plaintiff specifically alleged he was denied release because Defendants were improperly rejecting and interfering with his proposed host sites to which he could be released as a sex offender. (Docs. 22, 23). Plaintiff also alleged Defendant parole officers applied improper standards in light of the Northern District's holding in *Murphy v. Raoul*, 380 F. Supp. 3d 731 (N.D. Ill. 2019).

    On August 6, 2025, Plaintiff filed a Motion for Summary Judgment (Doc. 79); Defendants filed a Response (Doc. 81); and Plaintiff filed a Reply (Doc. 83). On

August 11, 2025, Defendants filed a Motion for Summary Judgment (Doc. 80); Plaintiff filed a Response (Doc. 82); and Defendants filed a Reply (Doc. 84).

## II

The Court finds the following material facts. During the relevant period, Plaintiff was incarcerated at East Moline Correctional Center ("East Moline"). In 2015, Plaintiff was indicted on three counts of retail theft enhanced to include a count of burglary. (Doc. 79-24 at ¶ 7). In 2017, Plaintiff was convicted and sentenced to eight years of imprisonment with the Illinois Department of Corrections ("IDOC") to be followed by three years of MSR. (Doc. 79-2; Doc. 79-24 at ¶ 9). Prior to his 2017 retail theft conviction, Plaintiff was convicted of aggravated sexual assault in 1986 and sentenced to fourteen years of imprisonment. (Doc. 79-3 at p. 2; Doc. 79-24 at ¶ 10). At the time of the offense, Plaintiff was 31 years old, and the victim was 39 years old. *Id.*

Pursuant to 730 ILCS 5/3-6-3(2.1), Plaintiff was given a one-day credit against his 2017 sentence for every day served in prison. (Doc. 79-4 at p. 2; Doc. 79-24 at ¶ 11). Plaintiff's MSR was set to begin on June 29, 2022, and last for three years until June 29, 2025. *Id.*

Among the conditions of Plaintiff's release on MSR was the condition that he "refrain from all contact, directly or indirectly, personally, by telephone, letter, or through a third party, with minor children without the prior identification and approval of an agent of the Department of Corrections." (Doc. 80-2 at p. 2, ¶ 25). Plaintiff contends this was not a condition of his parole as established by the Prisoner Review Board ("PRB") prior to his release; the condition that Plaintiff refrain from contact with children was instead listed as a term to which he agreed on the day of his release in his MSR agreement. (Doc. 79-4; Doc. 80-2).

Defendant Jeffreys was the Director of the IDOC and the final authority acting on the appeals Plaintiff submitted to the Administrative Review Board ("ARB") regarding the parole officers' decisions to deny his proposed host sites.

Defendant Morris was the Commander of the IDOC's parole division and was responsible for reviewing some of the denials of Plaintiff's proposed host sites. Defendant Morris concurred with subordinate parole officers' recommendations to deny placement at the homes of Fred Blue, Tracy Weathersby, James Capps, and Mary Dunum (the second time Ms. Dunum's home was inspected). (Doc. 80-1).

Defendants Borris and Salsberry were parole agents for the IDOC. Defendant Borris was assigned to investigate potential host sites for Plaintiff during his MSR. Defendant Borris participated in inspecting and denying the host sites with Mr. Blue, Ms. Thomas, and Ms. Dunum. (Doc. 80-1 at pp. 1, 7-10). Defendants contend Plaintiff's Parole Site Investigation History indicates that Defendant Salsberry was not involved in investigating or denying Plaintiff's host sites. *Id.*

In *Murphy, et al. v. Madigan, et al.*, indigent sex offenders, who were subject to prolonged incarceration after their release dates because the IDOC could not find appropriate places for them to live on MSR, brought a putative class action in the U.S. District Court for the Northern District of Illinois against the Illinois Attorney General and the IDOC's Director to challenge the constitutionality of such indefinite detention. *Murphy, et al. v. Madigan, et al.*, Case No. 16-cv-11471, Doc. 1 (N.D. Ill. Dec. 19, 2016).

On April 6, 2018, the Northern District certified a class defined as "all individuals sentenced to serve 'three-years-to-life' on MSR currently detained in the Illinois Department of Corrections ("IDOC") who have been approved for release on MSR by the PRB but have been denied release from IDOC custody

3

because of their inability to obtain an approved host site." *Id.* at Doc. 63 at p. 2. Like the class members in *Murphy*, Plaintiff contends he was held beyond his release date because he was indigent and unable to find housing acceptable to Defendants. Defendants dispute that Plaintiff was a member or potential member of the *Murphy* class.

On March 31, 2019, the Northern District issued an opinion in *Murphy v. Raoul* and held the defendants violated the class members' Eighth Amendment rights by prolonging their incarceration based on indigency and the lack of an acceptable host site, which resulted in their indefinite detention. 380 F. Supp. 3d 731 (N.D. Ill. 2019).

On January 15, 2020, the Northern District issued a permanent injunction requiring the defendants to submit a compliance plan to ensure class members did not remain imprisoned due to their inability to comply with host site requirements. (Doc. 79-5). On February 27, 2020, the defendants submitted a Compliance Plan, which included changes to the IDOC's policies regarding the approval of host sites for sex offenders. (Doc. 79-6 at p. 3). One such policy change relevant to this case was as follows: "A host site will not be denied solely on the basis of an ***occasional*** child visitor unless the child who visits the host site was the victim of the offense." *Id.* (emphasis added). Another revised policy stated: "Parole agents will not deny a host site based ***solely*** on the presence of toys or pictures of children." *Id.* (emphasis added).

The Compliance Plan also stated the IDOC operated two Adult Transition Centers ("ATCs") in Peoria and Aurora, Illinois. *Id.* at p. 4. Akin to work release programs, the ATCs allowed sex offenders, who were approximately two years from the expiration of their sentence, opportunities to find employment. *Id.* In 2021, Plaintiff applied for a transfer to the ATC in Aurora. Plaintiff's request was

4

denied, and he appealed the denial. Defendants dispute that Plaintiff was entitled to placement at the ATC in Aurora because the facility was for women only.

From January 2022 through December 2022, Plaintiff proposed six host sites for serving his MSR. (Doc. 80-1). Five of the six sites were private residences and were denied as host sites following the parole agents' investigations. *Id.* The first host site Plaintiff proposed was with his nephew, Fred Blue, who resided at 189 S. Lincoln Avenue in Aurora, Illinois. *Id.* at p. 1. According to Plaintiff's Parole Site Investigation History, Defendant Borris attempted to call Mr. Blue several times on June 18, 2022, but the calls immediately went to an error message suggesting the number was disconnected. *Id.* As a result, Defendant Borris went to 189 S. Lincoln Avenue to meet with Mr. Blue in person. *Id.* Defendant Borris knocked on each door of the residential building and received a response only at the door marked #3, where Mr. Blue allegedly resided. *Id.* The person did not open the door, refused to identify themselves, and told Defendant Borris no one named Fred Blue lived in the building. *Id.* Defendant Borris denied the host site, as Fred Blue no longer lived at the address. *Id.* Defendant Morris concurred with the denial. *Id.* at p. 2. The Counseling Summary provided to Plaintiff stated: "Note to offender: Your host site with Fred Blue is denied due to resident at host site stating Fred Blue did not reside there." (Doc. 79-19).

According to an affidavit from Mr. Blue, his address was 187 S. Lincoln Avenue. (Doc. 79-28 at ¶ 2). Mr. Blue stated no one visited his residence or contacted him regarding his willingness to act as a host. *Id.* at ¶¶ 3-4. Defendants contend that Kane County property records and publicly available maps do not have any results for a 187 S. Lincoln Avenue but do have records for 189 S. Lincoln Avenue, which is designated with the PIN 15-27-104-034. (Doc. 81 at p. 23). Additionally, in his Amended Complaint, Plaintiff alleged Mr. Blue's address was "189 S. Lincoln #3, Aurora Illinois 60505." (Doc. 23 at p. 12).

The second host site Plaintiff proposed was with his brother-in-law, James Capps, who resided at 2038 Lilac Lane, Apt. 201, in Aurora, Illinois. (Doc. 80-1 at p. 3). On June 29, 2022, non-party parole agent, Jorge Martinez, investigated the residence in person. *Id.* at pp. 5-6. Agent Martinez's contemporaneous notes from the investigation stated:

> Agents met FTF with prospective host Johnny Capps. When advised that Mr. Capps would no longer be allowed to have his minor grandchildren at the residence he seemed concerned and requested additional time to speak with his landlord. Mr. Capps stated he recently received new landlords due to the building getting bought by another company. Mr. Capps stated he did not currently have their number but would find it. Agent advised he would call Mr. Capps back later today or tomorrow to follow up.

*Id.* at p. 6. On June 30, 2022, agent Martinez spoke with Mr. Capps on the phone and recorded the following note: "Mr. Capps advised agent that he would not host parolee due to his landlord telling him he could not have registered sex offenders living with him." *Id.* Defendant Morris concurred with agent Martinez's determination to deny Mr. Capps' residence as a host site. Plaintiff's IDOC Counseling Summary indicates the host site was denied because the landlord advised the agent that Plaintiff could not reside there. (Doc. 79-18).

Plaintiff contends Defendant Morris called Mr. Capps' landlord to inquire whether the landlord approved of a sex offender residing in Mr. Capps' apartment. (Doc. 79-18; Doc. 79-27). According to Mr. Capps' affidavit, his lease did not prohibit or restrict his right to allow others to reside with him, and his landlord had no right to object to Plaintiff living with him. *Id.* at ¶¶ 5-6. Defendants do not dispute that Mr. Capps' home was rejected as a host site due to the landlord's disapproval, but they deny Defendant Morris called Mr. Capps' landlord, as Plaintiff's Parole Site Investigation History does not reflect any agent or Defendant Morris called the landlord. (Doc. 80-1).

6

The third host site Plaintiff proposed was with his niece, Tracy Weathersby, who resided at 904 Hillcrest Drive, Apt. 3, in Dekalb, Illinois. (Doc. 80-1 at pp. 2-3). According to Plaintiff's Parole Site Investigation History, agent Martinez called Ms. Weathersby on June 27, 2022. *Id.* at p. 3. When the agent advised Ms. Weathersby that her grandchildren could not visit frequently if she hosted Plaintiff, Ms. Weathersby stated she was no longer willing to host Plaintiff and suggested Mr. Blue and Mr. Capps as alternatives. *Id.* Agent Martinez denied the host site. *Id.* Plaintiff's Counseling Summary stated: "Note to offender: Your host site with Tracy Weathersby was denied by parole due to children visiting her place of residence during your stay." (Doc. 79-15). According to an affidavit from Ms. Weathersby, she told the parole agent her grandchildren "visited from time to time," but she agreed to prohibit children from visiting while Plaintiff resided there. (Doc. 79-26 at ¶¶ 6-7). Defendants deny that Ms. Weathersby ever agreed to prohibit children from visiting her home. (Doc. 81 at p. 20, ¶ 42).

The fourth site Plaintiff proposed was with Brittany Thomas at 204 N. Loucks in Aurora, Illinois. (Doc. 80-1 at p. 5). During an inspection on July 15, 2022, the homeowners informed Defendant Borris they had not agreed to host Plaintiff, were legal FOID cardholders, possessed firearms, and were unwilling to remove the firearms from their home. *Id.* at pp. 7-8. Plaintiff admits Ms. Thomas' refusal to host him and the presence of firearms in the home were valid reasons why her home was not approved as a host site. (Doc. 82 at p. 5).

The fifth site Plaintiff proposed was with his sister, Mary Dunum, who resided at 109 N. Harrison in Aurora, Illinois. (Doc. 80-1 at pp. 4-5). According to Plaintiff's Parole Site Investigation History, Defendant Borris inspected Ms. Dunum's residence on July 15, 2022, and found two minor children in the home along with numerous children's items. *Id.* at p. 8. Ms. Dunum told Defendant Borris she babysat children all the time, and the toys belonged to her

7

grandchildren, who did not reside with her. *Id.*; Doc. 79-25. When Defendant Borris asked Ms. Dunum if other arrangements could be made for the children, Ms. Dunum indicated she was willing to comply, but it would take time. (Doc. 80-1 at p. 8). Defendant Borris denied the host site and advised Ms. Dunum to contact the facility once in compliance. *Id.* Defendant Borris' notes from the inspection stated:

> Agent arrived to 109 N Harrison St aurora in reference to a placement investigation for sex offender. Prospective host answered door and identified self as sister of sex offender. Individual answered the door with a minor female. Individual attempted to lie and stated that the children in the residence were only there that day. Agent observed numerous childrens [sic] items including a pack and play for an infant, toddlers table and chairs, video game systems. Upon further investigation there was a 5 and 2 year old present who are not the parolees [sic] children. Agent inquired further and individual stated she babysits children all the time. Agent inquired if arrangements could be made for the children to be removed and individual reported that she is willing to do that but would take time. Agent advised to call facility once in compliance. Placement denied at this time.

(Doc. 80-1 at p. 8). Plaintiff's Counseling Summary stated: "Note to offender: The host site with Mary Dunum was denied by parole due to children being at risk." (Doc. 79-13).

According to Ms. Dunum's affidavit, she agreed to host Plaintiff; no children resided with her; and she would not allow children to visit while Plaintiff lived with her. (Doc. 79-25).

On June 29, 2022, the IDOC was unable to release Plaintiff because he violated Rule #5 of his MSR by failing to provide a suitable host site. (Doc. 79-22). Plaintiff appealed the parole violation to the PRB. (Doc. 79-23). On July 19, 2022, the PRB ordered, on appeal, that Plaintiff be held until an approved host site was found.

On July 7, 2022, Plaintiff submitted a grievance requesting release. (Doc. 81-2 at pp. 7-8). Plaintiff's grievance referred to the denial of Ms. Weathersby's residence as a host site, but it did not mention Mr. Capps or Mr. Blue. *Id.* Plaintiff's grievance was denied based on the denial of the host site. *Id.* at p. 5. Defendant Jeffreys concurred with the denial. *Id.*

On July 16, 2022, Plaintiff filed another grievance asking to resubmit his sister, Mary Dunum, as a host site. *Id.* at pp. 3-4. On July 28, 2022, Plaintiff's grievance was denied based on the parole agent's denial of the host site. *Id.* at p. 1. Defendant Jeffreys concurred with the denial. *Id.*

On July 21, 2022, Plaintiff alleges he filed a complaint with Defendant Jeffreys, informing him that Defendants Borris, Morris, and Salsberry were not following the IDOC's new policies. (Doc. 23 at p. 26). Plaintiff also informed Defendant Jeffreys his "sister had agreed to follow the wishes of agent Borris by removing all the kids stuff out of her house in order for Plaintiff to be released from prison." *Id.* On or about August 10, 2022, Plaintiff received a response indicating his complaint had been sent to the ARB. *Id.* at p. 27. On August 16, 2022, Plaintiff's request was granted, and Ms. Dunum's residence was reinspected. (Doc. 80-1 at pp. 9-10).

When Defendant Borris and non-party parole agents, Timothy Blair and Jorge Martinez, arrived at Ms. Dunum's residence on August 16, 2022, they found the same minor children present in the home. *Id.* at p. 9. The agents spoke with Ms. Dunum and her daughter, Shirae Dunum, the children's mother. *Id.* The agents learned there was nowhere else for Shirae Dunum and her children to go, and there were no plans for where the children would go if Plaintiff resided with Ms. Dunum. *Id.* Both investigations revealed the minor children were not "occasional" visitors but instead visited frequently or even resided there. *Id.* at pp. 9-10. As a result, the host site was denied. *Id.*

9

The sixth host site, Hand-n-Hand in Chicago, was not identified as a potential site until early December 2022. (Doc. 80-1 at pp. 10, 12). Hand-n-Hand was approved as a host site, and Plaintiff was released on December 15, 2022. *Id.*; Doc. 81-3 at p. 1. At the time of his release, Plaintiff had served 169 days of his MSR term at East Moline. (Doc. 23-1 at p. 25; Doc. 80-1 at p. 12).

### III

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, "[t]he court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "Inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). In order to successfully oppose a motion for summary judgment, a plaintiff must do more than raise a "'metaphysical doubt' as to the material facts, and instead must present definite, competent evidence to rebut the motion." *Michael v. St. Joseph Cnty.*, 259 F.3d 842, 845 (7th Cir. 2001) (internal citation omitted).

### B

Plaintiff argues Defendants violated his Eighth and Fourteenth Amendment rights by incarcerating him for six months beyond his MSR date by (1) denying his placement at an ATC in Aurora, Illinois, and (2) rejecting Plaintiff's host sites in

10

violation of *Murphy* and the IDOC's policies. Defendants argue they are entitled to summary judgment because they were not deliberately indifferent by requiring Plaintiff to serve part of his MSR term at an IDOC facility, as an acceptable parole site was not identified until December 2022.

As an initial matter, the Court notes Plaintiff was allowed to proceed only on an Eighth Amendment deliberate indifference claim, not a Fourteenth Amendment claim. In its Merit Review Order, the Court stated:

> Pursuant to its merit review of Plaintiff's Amended Complaint under 28 U.S.C. § 1915A, the Court finds that the Amended Complaint states a claim against Defendants for violating Plaintiff's Eighth Amendment rights by keeping him imprisoned longer than he should be. Any additional claims shall not be included in the case except at the Court's discretion and on a motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.

(Doc. 22 at p. 3). Plaintiff did not move to include a Fourteenth Amendment claim before filing his Motion for Summary Judgment, nor did he seek leave to file a second amended complaint under Rule 15. As a result, the Court will not consider Plaintiff's arguments related to the Fourteenth Amendment.

The Seventh Circuit has recognized that "[a] plaintiff states a claim for an Eighth Amendment violation if he is [incarcerated] for longer than he should have been due to the deliberate indifference of correctional officials." *Childress v. Walker*, 787 F.3d 433, 438 (7th Cir. 2015) (citing *Burke v. Johnston*, 452 F.3d 665, 667 (7th Cir. 2006)); *Armato v. Grounds*, 766 F.3d 713, 721 (7th Cir. 2014). To establish liability under Section 1983 for excessive incarceration, a plaintiff must demonstrate that: (1) the defendants held him beyond the term of his incarceration without penological justification; and (2) the prolonged detention was the result of the defendants' deliberate indifference. *Id.* (citing *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001)). Deliberate indifference is shown where defendants ignore a

known risk of prolonged confinement. *Armato*, 766 F.3d at 721 (citing *McGee v. Adams*, 721 F.3d 474, 480-81 (7th Cir. 2013)). It is a well-founded principle of law that "[d]eliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016); *see also Armato*, 766 F.3d at 721. When there is a known risk, a state officer is deliberately indifferent "when he does nothing," *Figgs*, 829 F.3d at 903, or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred. *Burke*, 452 F.3d at 669.

### 1

In his Amended Complaint, Plaintiff alleges Defendant Salsberry was one of the agents who investigated the host sites with Ms. Weathersby and Ms. Dunum and recommended denial. However, Plaintiff presented no evidence that Defendant Salsberry was personally involved in the investigation and denial of any host sites. Defendants' Exhibit 1, the history of investigations into Plaintiff's proposed host sites, reveals one mention of Defendant Salsberry on June 23, 2022, when Ms. Weathersby called and asked to speak with Defendant Salsberry. (Doc. 80-1 at p. 2). Plaintiff did not address Defendants' arguments regarding Defendant Salsberry's lack of personal involvement in his Response. (Doc. 82).

Based on the sparse evidence regarding Defendant Salsberry's personal involvement, no reasonable jury would find that Defendant Salsberry violated Plaintiff's Eighth Amendment rights. *See Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional deprivation."). Defendant Salsberry is entitled to summary judgment.

2

Defendant Borris, the only Defendant who performed in-person inspections of Plaintiff's host sites, inspected the residences of Fred Blue, Brittany Thomas, and Mary Dunum. Defendant Borris first attempted to call Mr. Blue on June 18, 2022, but the calls immediately went to an error message. As a result, Defendant Borris attempted to meet with Mr. Blue in person by going to his residence. Defendant Borris' notes confirm that he knocked on each door of the building located at 189 S. Lincoln Avenue in Aurora, Illinois. Only the door marked #3, the unit Mr. Blue allegedly resided in, responded to his knocking. The person in unit 3 refused to open the door and stated that no one named Fred Blue lived in the unit or the building. As a result, the host site was denied because the host did not live there.

On July 15, 2022, Defendant Borris visited Brittany Thomas' residence. Ms. Thomas and a male resident indicated they were not willing to host Plaintiff, were valid FOID cardholders who legally possessed firearms, and were unwilling to remove the firearms from the house.

The same day, Defendant Borris inspected Mary Dunum's residence. During his visit, two minor children were present in the home. Ms. Dunum told Defendant Borris they were only there for the day; however, Defendant Borris observed numerous children's items, such as a pack-n-play, a toddler's table and chairs, and video game systems. When Defendant Borris inquired further, Ms. Dunum stated she babysat children "all the time." (Doc. 80-1 at p. 8). When Defendant Borris asked if other arrangements could be made for the children, Ms. Dunum confirmed she was willing to do so, but it would take time. Defendant Borris denied the placement but advised Ms. Dunum to call the facility once in compliance.

On August 16, 2022, Defendant Borris and agents Martinez and Blair returned to Ms. Dunum's home for a second visit. Defendant Borris observed the

same two children, who were present during his first visit, sleeping on the couch. Ms. Dunum stated she did not know where her daughter, Shirae Dunum, lived and could not provide details about an alternative place for her grandchildren to go if Plaintiff resided with her. Defendant Borris noted Ms. Dunum "made indications that the daughter and kids did not have a home and resided there." (Doc. 80-1 at p. 9). Ms. Dunum's residence was denied as a host site due to at risk children in the home.

Plaintiff contends Defendants denied host sites for reasons prohibited by *Murphy* and the IDOC's policies, but those arguments largely rely upon a mischaracterization of the IDOC's policies and omission of key words. In his Response, Plaintiff states the Compliance Plan "provides that a site will not be disapproved based upon minors visiting the residence." (Doc. 82 at p. 12). This mischaracterization omits two important terms from the change which must be included to understand the change accurately. The revised policy states: "A host site will not be denied *solely* on the basis of an *occasional* child visitor unless the child who visits the host site was the victim of the offense." (Doc. 79-6 at p. 3) (emphasis added). This policy change provides that occasional child visitors may not be the sole reason for denying a host site.

Defendants argue the evidence shows the children in Ms. Dunum's home were more than occasional visitors. The same two children Defendant Borris saw during his first visit to Ms. Dunum's home on July 15, 2022, were present during his second visit on August 16, 2022. Defendant Borris and agents Martinez and Blair noted it appeared Shirae Dunum and her children resided with Ms. Dunum, and there were no plans for where the children would go if Plaintiff resided there. Plaintiff disputes that the children resided with Ms. Dunum. According to Ms. Dunum's affidavit, she told the agent that no children resided with her, and she would not allow children to visit. (Doc. 79-25).

Defendants argue the Court should disregard Ms. Dunum's affidavit, along with affidavits from Mr. Blue, Mr. Capps, and Ms. Weathersby, because Plaintiff did not serve the affidavits on Defendants during discovery or supplement his disclosures under Federal Rule of Civil Procedure 26. This Court's Standing Order dated November 15, 2024, states: "If a party files an affidavit in support of or in opposition to a motion for summary judgment, the Court will not consider the affidavit unless it was provided to the opposing party *before* the deadline for the completion of discovery has passed." (d/e 11/17/2024) (emphasis in original). Defendants state they received the affidavits when Plaintiff filed his Motion for Summary Judgment on August 6, 2025. The disclosure of the affidavits occurred after discovery closed on April 11, 2025. Pursuant to its Standing Order, the Court will not consider the affidavits from Ms. Dunum, Mr. Blue, Mr. Capps, and Ms. Weathersby.

The Court finds Defendant Borris is entitled to summary judgment, as no reasonable jury would find that he violated Plaintiff's Eighth Amendment rights by investigating and denying the host sites with Mr. Blue, Ms. Thomas, and Ms. Dunum, as the host sites were denied for valid reasons. Mr. Blue did not reside at the address Plaintiff provided; Ms. Thomas was unwilling to host Plaintiff; and the agents' investigations revealed Plaintiff would be in frequent contact with minors in Ms. Dunum's home, which prohibited by the terms of his MSR.

**3**

Defendants argue Defendant Morris was not deliberately indifferent when he relied on the investigation results of other parole agents when concluding that the host sites were untenable for Plaintiff's release.

The evidence shows Defendant Morris' only involvement was to review the notes from the investigations performed by his subordinates and to approve or deny the proposed site. In so doing, Defendant Morris accepted the

15

recommendations of his agents. As stated above, Defendant Borris denied the host sites of Fred Blue, Brittany Thomas, and Mary Dunum for valid reasons. That leaves the remaining sites with hosts James Capps and Tracy Weathersby.

On June 27, 2022, non-party parole agent Martinez called Ms. Weathersby, who indicated she was no longer willing to host Plaintiff when agent Martinez told her that her grandchildren could not visit frequently if she hosted Plaintiff. The host site was denied because Ms. Weathersby was no longer willing to host Plaintiff.

On June 29, 2022, agents Martinez and Faught investigated Mr. Capps' home. During the investigation, Mr. Capps indicated he needed additional time to contact his landlord for permission to have Plaintiff reside with him. On June 30, 2022, agent Martinez called Mr. Capps, who stated his landlord refused to allow Plaintiff to live with him.

Plaintiff contends Defendant Morris "went out of his way" to reject the host site by "contacting the landlord of an otherwise acceptable host site to solicit the landlord's objection to a registered sex offender living in the landlord's building." (Doc. 79 at p. 3, ¶ 7). Plaintiff offered no evidence to support this contention except for his own affidavit. Whether Defendant Morris called Mr. Capps' landlord or whether Mr. Capps told agent Martinez his landlord did not approve is immaterial. The host site was denied because Mr. Capps did not have permission from the property owner to host Plaintiff.

The record reflects each site was denied for valid reasons. No reasonable jury would find that Defendant Morris was deliberately indifferent by concurring with the investigating agents' recommendations.

### 4

Defendants argue Defendant Jeffreys was not deliberately indifferent and cannot be held liable under a theory of *respondeat superior*. Plaintiff alleges

16

Defendant Jeffreys denied his grievances regarding the denial of his host sites. In his Amended Complaint, Plaintiff alleges he sent a complaint directly to Defendant Jeffreys on July 21, 2022, and received a response indicating that his complaint had been forwarded to the ARB for review. Plaintiff admits the only request in his complaint was for parole agents to return to Ms. Dunum's home for another inspection.

"Prison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017). There is no evidence that Defendant Jeffreys was involved in the inspections or denials of the proposed host sites. In response to the complaint Plaintiff sent to Defendant Jeffreys, parole agents returned to Ms. Dunum's residence for a second visit on August 16, 2022. No reasonable jury would find that Defendant Jeffreys was deliberately indifferent to Plaintiff.

### 5

Finally, Plaintiff claims *Murphy* held prolonging indigent sex offenders' release for want of a host site violated their Eighth Amendment rights, but the *Murphy* court did no such thing. The *Murphy* court explained, "Because the defendants' current application of the host-site requirement permits the indefinite detention of the plaintiffs, it breaches the promises enshrined in the Bill of Rights." *Murphy*, 380 F. Supp. 3d at 766 (*i.e.* refusal to release an inmate for want of a host site is not, onto itself, a constitutional violation, but refusal which could result in indefinite incarceration is such a violation). The *Murphy* court stated:

> Once again, the Court notes that its decision relates to an as-applied challenge and in no way purports to tell the defendants how to best administer mandatory supervised release for sex offenders. The Court does not order the immediate release of the plaintiffs, nor does it hold that the framework always operates unconstitutionally or that

> there are no set of circumstances under which it would be valid. The Court only holds that the host site requirement is unconstitutional under the specific facts in this case and as applied to the defendants. It remains the IDOC's job to appropriately exercise its discretion to achieve the goals of the state legislature in implementing mandatory supervised release for sex offenders.

*Id*. Here, Plaintiff's MSR was not indefinite, and the first five host sites Plaintiff proposed were denied for valid reasons. No host site was denied "solely" because there were toys or pictures of children in the home or because children were "occasional" visitors. Plaintiff asserts Defendants were deliberately indifferent by denying him placement at the ATC in Aurora, but that facility was for women only. Plaintiff failed to show that Defendants deliberately held him beyond the term of his incarceration. Summary judgment is granted in favor of Defendants.

## IV

For the reasons stated, *supra*:

(1) Plaintiff's Motion for Summary Judgment [79] is DENIED, and Defendants' Motion for Summary Judgment [80] is GRANTED. Defendants Michael Morris, Rob Jeffreys, Mark Salsberry, and Anthony Borris are DISMISSED WITH PREJUDICE. Plaintiff takes nothing. Each side is to bear their own attorney's fees, costs, and expenses.

(2) The Clerk is directed to enter judgment and close this case.

(3) If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4).

(4) To proceed *in forma pauperis* on appeal, Plaintiff must file a motion to proceed on appeal *in forma pauperis* and identify the issues he will present on appeal to assist the Court in determining whether the appeal is taken in good faith. Fed. R. App. P. 24(a)(1)(c); *Celske v. Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (An

appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a responsible assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose . . . has some merit" from a legal perspective). If Plaintiff chooses to appeal, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal.

*It is so ordered.*

Entered: November 24, 2025

s/Jonathan E. Hawley
U.S. District Judge